UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Andrea Pollack and
Angela Garozzo Scopelianos,
    Plaintiffs
    v.                                 Case No. 20-cv-825-SM
                                              Opinion No. 2021 DNH 132
Goodwin & Associates
Hospitality Services, LLC
d/b/a Goodwin Recruiting,
Eric Goodwin, and Scott Gaba,
    Defendants

**O R D E R**

Plaintiffs, Andrea Pollack and Angela Garozzo Scopelianos, filed suit against defendant Goodwin & Associates, LLC, d/b/a Goodwin Recruiting, and its officers, Eric Goodwin and Scott Gaba, asserting wage claims under federal and state law, as well as a panoply of additional state law claims. For their part, defendants have asserted multiple counterclaims against the plaintiffs, including claims for breach of contract, misappropriation of trade secrets, intentional interference with economic relationships, negligent interference with contract, conversion, unjust enrichment, and violation of New Hampshire's Consumer Protection Act.

Plaintiffs have moved to dismiss all defendants' counterclaims. Plaintiffs have also moved for sanctions and ask the court to strike certain allegations set forth in defendants'

1

counterclaims.  Plaintiffs' motion for sanctions is denied;
their motion to dismiss is granted in part and denied in part.

## BACKGROUND

The facts are drawn from defendants' answer and
counterclaims, taking the well-pleaded allegations as true for
purposes of evaluating the motion to dismiss.  See Ruivo v.
Wells Fargo Bank, 766 F.3d 87, 90 (1st Cir. 2014).

Defendant Goodwin Recruiting ("Goodwin") is an employee
recruiting firm based in New Hampshire.  Eric Goodwin and Scott
Gaba serve as officers of the company – Goodwin as President,
and Gaba as Chief Operating Officer.  Goodwin recruits
candidates to fill job openings on behalf of its clients,
employers in the hospitality industry.

Defendants allege that, in its 21 years of operation,
Goodwin Recruiting has invested heavily in establishing,
developing, and maintaining confidential and propriety
information and materials, business strategies, client contacts,
business contacts, markets, and products.  Counterclaim ¶ 7.
The company has developed customer goodwill through its
employees and independent contractors "who are entrusted with
confidential, proprietary, and/or trade-secret information and
access to customers as part of the essential functions they
provide" to Goodwin Recruiting.  Counterclaim ¶ 9.  To secure

that information, the company requires independent contractors partnering with Goodwin to enter into agreements that contain nondisclosure, noncompete, and non-solicitation provisions.

Andrea Pollack lives in Florida.  She joined Goodwin Recruiting as an independent contractor on May 12, 2015.  Angela Scopelianos lives in Arizona.  She joined the company as an independent contractor on November 6, 2017.  Both plaintiffs executed multiple agreements with the company, including an independent contractor agreement, a nondisclosure agreement, and a noncompete agreement.  Under the independent contractor agreement, both plaintiffs agreed to affiliate their recruiting businesses with Goodwin Recruiting in return for payment of commissions based on percentages of fees generated from the placement of candidates with clients.  Over the course of their affiliation, Scopelianos and Pollack received and retained commissions paid by Goodwin Recruiting.

Scopelianos and Pollack also agreed to "various nondisclosure, non-solicitation, and other protective provisions" included in the agreements they executed, and they "acknowledged that Goodwin Recruiting has invested substantial labor and financial capital in the establishment of its reputation, intellectual property, confidential and proprietary information and materials, business strategies, client contacts and business contacts."  Counterclaim ¶¶ 38-39.  Scopelianos and

3

Pollack agreed they would keep all "confidential and trade secret information"[1] relating to the company "strictly confidential"; agreed that, after termination of their business relationship with the company, "all client lists, fee agreements, training materials, marketing materials, candidate files, and any and all materials essential to the operations of Goodwin Recruiting" could not be used except for the benefit of Goodwin Recruiting; and agreed not to "use, compete or profit from any contacts or relationships with clients that [they have] developed based upon Confidential Information."  Counterclaim ¶¶ 41, 45.

Under the noncompete agreements, Pollack and Scopelianos also agreed "to refrain from soliciting other independent contractors and employees of Goodwin Recruiting," and to "refrain from soliciting or contracting with any client that [they] serviced and that engaged Goodwin Recruiting for any

---

[1]    "Confidential information" is defined in the contracts as "all information or material that has or could have commercial value or other utility in the business in which Goodwin Recruiting is engaged," and includes "client contact or client business information obtained by the Contractor" as a result of the contractor's affiliation with Goodwin Recruiting. Counterclaim ¶ 44.  The noncompete agreements signed by Scopelianos and Pollack included as "confidential and proprietary" the company's "client lists, sales force data, employee candidates and resumes, and fee agreements." Counterclaim ¶ 47.

purpose during the" duration of their affiliation with the
company.  Counterclaim ¶ 47.

On April 27, 2020, Pollack and Scopelianos ended their
affiliation with Goodwin Recruiting.  On May 4, 2020, Pollack
filed Articles of Organization with the Florida Secretary of
State, establishing "A1A Recruiting LLC," which lists Pollack
and Scopelianos as A1A's managers.  A1A provides "meaningful
options and recruiting strategies" for candidates and employers
in many industries, including the hospitality industry.
Counterclaim ¶ 54.  According to defendants, A1A is in direct
competition with Goodwin Recruiting.

Defendants allege that, by establishing and operating A1A,
Pollack and Scopelianos have violated their contractual
agreements with defendants by "using and misappropriating
Goodwin Recruiting's confidential information and trade
secrets," and by "utilizing confidential client information
obtained in the course of working with Goodwin Recruiting to
solicit business from Goodwin Recruiting clients."  Counterclaim
¶¶ 62-63.  More specifically, defendants allege that Arooga's
Grille House & Sports Bar ("Arooga's") was an "active and
lucrative" client of the Goodwin company since 2012.  From April
2017, though April 2020, Pollack served as Arooga's principal
contact at Goodwin Consulting.  From June 2016, through April
2020, Goodwin Recruiting placed at least 21 candidates with

Arooga's.  However, since Pollack's and Scopelianos's departure
in April 2020, the company says it has not placed any candidates
with Arooga's.  Moreover, Arooga's has informed representatives
of Goodwin Recruiting that Arooga's is working with other
recruiters.  Defendants contend that Pollack and Scopelianos
solicited Arooga's and are now performing recruiting services on
Arooga's behalf.

Defendants further allege that Pollack and Scopelianos have
violated their contractual agreements by contacting Patrick
McKee, an independent contractor affiliated with Goodwin
Recruiting, and discussing with him his contractual obligations
to Goodwin Recruiting.  Defendants surmise that plaintiffs were
attempting to gauge McKee's loyalty to Goodwin Recruiting, and,
potentially, to solicit him to work for A1A.  Defendants further
allege that plaintiffs have contacted other independent
contractors affiliated with Goodwin Consulting, and attempted to
solicit them to work at A1A as well.

Based on the foregoing, defendants assert claims for
injunctive relief, specific performance, breach of contract,
misappropriation of trade secrets, intentional interference with
economic relationships, negligent interference with contract,
conversion, unjust enrichment, and violation of New Hampshire's
Consumer Protection Act.  Plaintiffs promptly moved to dismiss
all of defendants' claims against them.

6

## MOTION FOR RULE 11 SANCTIONS

Plaintiffs also filed a separate motion for sanctions, asking the court to strike from defendants' counterclaims those allegations relating to Arooga's.  Plaintiffs say that the Arooga's allegations are "objectively and demonstrably false," and that defendants either knew the allegations were false when they asserted them or asserted the allegations without sufficiently investigating their veracity.  Pls.' Mem. in Support of R11 Motion at 1.  In support of their argument, plaintiffs submit a sworn statement from Gary Heuther, Jr., the president of Arooga's, who oversees recruiting by outside agencies.  In his affidavit, Heuther states that Arooga's has not done any business with A1A, and that Arooga's has not been solicitated by Pollack or Scopelianos.  Heuther states that Arooga's has not worked with any outside recruiting companies since May 2020, due to the economic impact of the COVID-19 pandemic on its business.  And, Heuther says, he has informed various representatives of Goodwin Recruiting of that fact on several occasions (i.e., that Arooga's did not require recruiting assistance because of COVID-19's impact).  Both plaintiffs submit affidavits, as well.  They attest that they have neither solicited nor worked with Arooga's since leaving Goodwin Recruiting, and they have not entered into any type of business relationship with Arooga's.

Plaintiffs argue that the affidavits from Heuther, Scopelianos, and Pollack – the three parties who possess first-hand knowledge about whether plaintiffs solicited or conducted business with Arooga's – demonstrate the "fallaciousness" of defendants' Arooga's-related allegations, and call into question the reasonableness of any pre-filing inquiry defendants may have conducted.  Pls.'s Mem. in Support of R11 Motion at 7.  And, plaintiffs say, by persisting with their counterclaims after it became apparent that those claims lacked evidentiary support, defendants are needlessly increasing litigation costs, and causing unnecessary delay.  Accordingly, plaintiffs ask the court to strike all references relating to Arooga's from defendants' counterclaims.  They also ask for an award of plaintiffs' fees and costs associated with filing their motion for sanctions.

In response, defendants argue that the affidavits of plaintiffs and Heuther are not conclusive proof that defendants' allegations are false; and that they ought to have the opportunity to explore the relationship between Arooga's and plaintiffs in the course of discovery.  Defendants also insist that their pre-filing investigation was reasonable, as, prior to filing their counterclaims, several Goodwin Recruiting affiliates were told by Arooga's employees that Arooga's was working with other recruiters, specifically a recruiter named

"Angela" (who, defendants assumed, was the plaintiff, Angela
Scopelianos).

    "Rule 11 permits a court to impose sanctions on a party or
lawyer for advocating a frivolous position, pursuing an
unfounded claim, or filing a lawsuit for some improper purpose."
CQ Int'l Co. v. Rochem Int'l, Inc., USA, 659 F.3d 53, 60 (1st
Cir. 2011) (citing Fed. R. Civ. P. 11(b)).  As the Court of
Appeals for this circuit has stated, the Rule "is not a strict
liability provision, and a showing of at least culpable
carelessness is required before a violation of the Rule can be
found."  Id. (quoting Citibank Global Mkts., Inc. v. Santana,
573 F.3d 17, 32 (1st Cir. 2009)).  "The mere fact that a claim
ultimately proves unavailing, without more, cannot support the
imposition or Rule 11 sanctions."  Id. (quoting Protective Life
Ins. Co. v. Dignity Viatical Settlement Partners, L.P., 171 F.3d
52, 58 (1st Cir. 1999) (alterations omitted)).  Finally, whether
a litigant breaches his or her duty under Rule 11 to "conduct a
reasonable inquiry into the facts and the law" "depends on the
objective reasonableness of the litigant's conduct under the
totality of the circumstances."  Navarro-Ayala v. Nunez, 968
F.2d 1421, 1425 (1st Cir. 1992) (internal quotation marks
omitted).

    Plaintiffs' motion presents a legitimate issue, but it is
premature.  "[A]lthough framed as a motion for sanctions,

[plaintiffs] really ask[] the court to adjudicate [defendants'
counterclaims] on the merits and dismiss them as lacking in
factual support." Allscripts Healthcare, LLC v. DR/Decision
Res., LLC, 495 F. Supp. 3d 47, 51–52 (D. Mass. 2020). A Rule 11
motion "should not be employed ... to test the sufficiency or
efficacy of allegations in the pleading; other motions are
available for those purposes." Id. (quoting E.E.O.C. v. Pines
of Clarkston, Inc., 2014 WL 6612375, at *2 (E.D. Mich. Nov. 20,
2014) (further quotations omitted)). "Accordingly, the better
course is to adjudicate the merits of a party's claims through
summary judgment and address the issue of Rule 11 sanctions at
the end of the litigation." Id. (citing Lichtenstein v.
Consolidated Serv. Group, Inc., 173 F.3d 17, 23 (1st Cir. 1999)
("Courts should, and often do, defer consideration of certain
kinds of sanctions motions until the end of [the litigation] to
gain a full sense of the case.") (further citations omitted)
(modifications in Allscripts, 495 F. Supp. 3d at 52).

For those reasons, plaintiffs' motion for Rule 11 sanctions
is denied at this time, without prejudice to refiling should the
counterclaims prove to be frivolous and unsupported by any good
faith belief with respect to the underlying facts.

## MOTION TO DISMISS COUNTERCLAIMS

### STANDARD OF REVIEW

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010). Although the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege each of the essential elements of a viable cause of action and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal punctuation omitted). In other words, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Instead, the facts alleged in the complaint must, if credited as true, be sufficient to "nudge[ ] [plaintiff's] claims across the line from conceivable to plausible." Id. at 570.

Generally, a court must decide a motion to dismiss exclusively upon the allegations in the complaint and the documents attached or convert the motion into one for summary

judgment.  <u>See</u> Fed. R. Civ. P. 12(2).  There is, however, an
exception to that general rule, as "[a] district court may also
consider 'documents incorporated by reference in [the
complaint], matters of public record, and other matters
susceptible to judicial notice.'"  <u>Giragosian v. Ryan</u>, 547 F.3d
59, 65 (1st Cir. 2008) (quoting <u>In re Colonial Mortgage Bankers
Corp</u>., 324 F.3d 12, 20 (1st Cir. 2003)) (alterations in
original).

**DISCUSSION**

As mentioned, plaintiffs have moved to dismiss all
defendants' counterclaims.  In so moving, plaintiffs point out
that defendants' counterclaims are "stunningly light on facts,"
and that defendants' repeated allegations relating to plaintiffs
"directly competing" with Goodwin Recruiting are mostly
irrelevant, since none of the agreements entered into by the
parties prohibit plaintiffs from working in direct competition
with defendants.  Plaintiffs also contend that defendants'
counterclaims are repetitive, and largely conclusory.

Rather than addressing each of defendants' counterclaims
for injunctive relief, specific performance, breach of contract,
conversion, and intentional interference with contract, and
explaining why defendants have failed to state a claim,
plaintiffs' challenge is both sweeping and general.  Plaintiffs

12

broadly argue that all of defendants' counterclaims should be
dismissed because defendants fail to sufficiently allege that
plaintiffs did anything wrong.  Plaintiffs also argue that
defendants' counterclaim allegations are simply implausible.
But, notably lacking from plaintiffs' motion is any discussion
of relevant legal standards, or citations to persuasive legal
authority relevant to each claim.

    "It is not enough merely to mention a possible argument in
the most skeletal way, leaving the court to do counsel's work,
create the ossature for the argument, and put flesh on its
bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir.
1990).  "[A] litigant has an obligation to spell out its
arguments squarely and distinctly, or else forever hold its
peace." Id.  See also Higgins v. New Balance Athletic Shoe,
Inc., 194 F.3d 252, 260 (1st Cir. 1999) ("The district court is
free to disregard arguments that are not adequately developed").
While it is conceivable that viable arguments might support the
plaintiffs' position — the court offers no opinion on that point
— at this juncture, plaintiffs have failed to develop arguments
concerning most of defendants' counterclaims.  See generally
Int'l Tape Co. v. Technicote, Inc., 2000 WL 33667076 at *3
(D.N.H. April 21, 2000) (discussing why courts should be
reluctant to embrace legal arguments that have not been
presented by the parties).  See also Coons v. Industrial Knife

Co., 620 F.3d 38, 44 (1st Cir. 2010) ("We have frequently emphasized that judges are not obligated to do a party's work for him, searching sua sponte for issues that may be lurking in the penumbra of the motion papers.  This is particularly true where, as here, the undeveloped argument raises complexities that defy an easy answer.") (citations omitted).

Because plaintiffs have not sufficiently developed an argument that explains why defendants fail to state counterclaims for injunctive relief, specific performance, intentional interference with contract, conversion, and breach of contract, plaintiffs' motion to dismiss is denied without prejudice as to those claims.

    1.    Misappropriation of Trade Secrets

Defendants assert a claim for misappropriation of trade secrets pursuant to New Hampshire's Uniform Trade Secrets Act. Plaintiffs urge dismissal of the claim, arguing that defendants fail to sufficiently allege trade secret misappropriation, and that defendants' allegations amount to little more than a formulaic recitation of claim elements.

To state a misappropriation claim under New Hampshire's UTSA, a party "must plead facts sufficient to establish that (1) it had a trade secret; (2) defendants used it; and (3) defendants knew or had reason to know that they obtained

knowledge of the trade secret through a breach of confidence reposed in them."  Wilcox Indus. Corp. v. Hansen, 870 F. Supp. 2d 296, 309 (D.N.H. 2012) (citing N.H. Rev. Stat. Ann. § 350–B:1).  The statute defines a "trade secret" as "information that '[d]erives independent economic value ... from not being generally known' and that '[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.'"  Id. (quoting N.H. Rev. Stat. Ann. § 350–B:1, IV).

Defendants' misappropriation claim is mostly comprised of conclusory allegations, that lack factual support.  However, at this juncture, the allegations are barely sufficient to meet the threshold for stating a plausible claim for misappropriation.

First, defendants have plausibly alleged the existence of a trade secret.  See Counterclaim ¶ 7.  Plaintiffs correctly note that defendants' allegations concerning their trade secrets are vague, and the "trade secrets" at issue are somewhat ill-defined.  However, defendants' allegations are bolstered by the precautions they took to safeguard the confidentiality of the information identified.  Defendants allege that they required the company's independent contractors to enter into multiple agreements that contained non-disclosure provisions, including a nondisclosure agreement, pursuant to which these plaintiffs agreed to "maintain the Confidential Information in strictest confidence for the sole and exclusive benefit of [Goodwin

Recruiting]." Id. at ¶ 45.  See, generally, Counterclaim ¶¶ 38-
48.  "Those actions suggest that the information was not
generally known to the public."  Adhesive Techs., Inc. v.
Isaberg Rapid AB, No. 10-CV-75-SM, 2011 WL 2134381, at *14
(D.N.H. May 26, 2011) (citing MedioStream, Inc. v. Microsoft
Corp., 2010 WL 4274578, 6 (E.D. Tex., 2010) (holding that
factual allegation regarding the protective steps taken by the
plaintiff rendered plausible plaintiff's allegation that the
information was not generally known to the public)).

Defendants' allegations regarding plaintiffs' use of their
trade secrets are also meagre, but sufficient.  The majority of
defendants' allegations concerning plaintiffs' use of trade
secret information are either too vague or implausible to pass
muster.  That plaintiffs started a competing recruiting business
does not, by itself, support the conclusion that plaintiffs are
using defendants' confidential information in the conduct of
that business.  Indeed, the sole factual allegation supporting
defendants' contention appears to be that plaintiffs allegedly
used defendants' confidential information in soliciting and
performing recruiting services for Arooga's (a client served by
Pollack while affiliated with Goodwin Recruiting).  But, at this
early stage, defendants' allegations are sufficient to withstand
plaintiffs' motion to dismiss.

Finally, defendants have sufficiently alleged that plaintiffs used defendants' trade secrets "despite knowing or having reason to know that they obtained knowledge of those trade secrets through improper means." <u>Wilcox Indus. Corp. v. Hansen</u>, 870 F. Supp. 2d 296, 310 (D.N.H. 2012). As discussed, defendants have alleged that plaintiffs signed multiple agreements, all of which contractually obligated them to maintain the confidentiality of defendants' trade secret information. Plaintiffs, therefore, knew of their obligation to keep the information confidential. Defendants further allege that plaintiffs used that "confidential client information obtained in the course of working with Goodwin Recruiting" in their solicitation of Goodwin Recruiting's clients, specifically Arooga's. Counterclaim ¶ 63. At this stage, defendants' allegations are sufficient to state a claim.

Because defendants have sufficiently stated a counterclaim for misappropriation of trade secrets, plaintiffs' motion to dismiss the claim is necessarily denied.

2.   <u>Unjust Enrichment</u>

To state a viable claim for unjust enrichment under New Hampshire law, "a plaintiff must plausibly allege that the defendant was enriched at the plaintiff's expense through either: (1) wrongful acts; or (2) 'passive acceptance of a

benefit that would be unconscionable to retain.'" <u>Camp v. Bimbo
Bakeries USA, Inc.</u>, No. 18-CV-378-SM, 2018 WL 6606243, at *6
(D.N.H. Dec. 17, 2018) (quoting <u>Kowalski v. Cedars of Portsmouth
Condo. Ass'n</u>, 146 N.H. 130, 133 (2001)).  In support of their
claim, defendants allege that, if the court determines that
plaintiffs were incorrectly classified as independent
contractors, and awards plaintiffs the damages they demand,
plaintiffs will be unjustly enriched if they are permitted to
retain the commissions they received as independent contractors.

Thus, defendants' unjust enrichment theory is essentially
that, should the court determine that plaintiffs were, indeed,
employees of Goodwin Recruiting, plaintiffs were unjustly
enriched when they received commissions-based fees generated
from the plaintiffs' placement of candidates with Goodwin
Recruiting's clients.  However, defendants also benefited from
this arrangement: as a result of plaintiffs' efforts, Goodwin
Recruiting received the candidate placement fees.

This court addressed a similar scenario in <u>Camp v. Bimbo
Bakeries USA, Inc.</u>, No. 18-CV-378-SM, 2019 WL 1472586, at *1
(D.N.H. Apr. 3, 2019), a FLSA action involving bakery delivery
drivers who, like plaintiffs, contested their classification as
independent contracts.  Defendants in that case also asserted a
counterclaim for unjust enrichment.  Plaintiffs moved to dismiss
the counterclaim.  The court wrote:

> Plaintiffs were "enriched" as a result of their
> efforts to sell Bimbo Bakeries' products.  Plaintiffs
> were also "enriched" as a result of their agreements
> to perform various advertising services on behalf of
> Bimbo Bakeries.  And, plaintiffs likely were able to
> avail themselves of various tax deductions available
> to independent contractors.  But, none of that inured
> to Bimbo Bakeries' detriment.  Indeed, Bimbo Bakeries
> were also "enriched" as a result of their
> relationships with plaintiffs and benefited
> financially from plaintiffs' efforts to both advertise
> and sell Bimbo Bakeries' products.  And, by
> classifying plaintiffs as independent contractors
> Bimbo Bakeries no doubt avoided substantial employer
> tax (and perhaps insurance) obligations.  That's
> typically how business relationships work - each side
> receives some benefit.

Id. at *1.  The court concluded that "[u]njust enrichment' is simply a poor fit to the facts alleged."  Id. at *2.

As in Bimbo Bakeries, defendants' counterclaim here is, essentially, a claim for offsets.  And, as in Bimbo Bakeries, "[i[f it is determined that plaintiffs were employees of [Goodwin Recruiting], and not independent contractors, their final recovery (if any) will take into account compensation they actually received from [Goodwin Recruiting] for their labor, as well as sums they should have received had they been properly treated as employees."  Bimbo Bakeries, id. at *2.  Plaintiffs' "recovery (if any) will likely amount to the difference between the two, and obviously not the total of the two."  Id.  Indeed, defendants have asserted "set off" as an affirmative defense.  But, that there will likely be various offsets when calculating the total damages to which plaintiffs are entitled (should they

ultimately prevail) does not compel the conclusion that
[defendants] have stated a viable common law claim for "unjust
enrichment."  Id. at *3.  Defendants argument to the contrary
are not persuasive.

Accordingly, plaintiffs' motion to dismiss defendants'
unjust enrichment counterclaim is granted.


   3.  Negligent Interference with Contract

Defendants have asserted a claim for negligent interference
with contract, a tort which New Hampshire does not recognize.
See Ferrero v. Coutts, 134 N.H. 292, 295 (1991) (citing Blue
Cross/Blue Shield of N.H.-Vt. v. St. Cyr, 123 N.H. 137, 143, 459
A.2d 226, 230 (1983)).  Defendants concede that New Hampshire
does not recognize the cause of action but urges the court to
create the claim.  The court declines that invitation.  As the
Court of Appeals for the First Circuit has stated:

> Federal courts are not free to extend the reach of
> state law.  See Erie R. Co. v. Tompkins, 304 U.S. 64,
> 78 (1938) (federal courts must apply state law as
> "declared by its Legislature in a statute or by its
> highest court in a decision"); Braga v. Genlyte Grp.,
> Inc., 420 F.3d 35, 42 (1st Cir. 2005).  When applying
> state law, "we will take care not to extend state law
> beyond its well-marked boundaries in an area ... that
> is quintessentially the province of state courts,"
> Markham v. Fay, 74 F.3d 1347, 1356 (1st Cir. 1996),
> and must exercise considerable caution when even
> considering the adoption of a new application, Doyle
> v. Hasbro, Inc., 103 F.3d 186, 192 (1st Cir. 1996).  A
> litigant who chooses federal court over state court
> "cannot expect this court 'to ... blaze new and

> unprecedented jurisprudential trails'" as to state
> law.  A. Johnson & Co. v. Aetna Cas. & Sur. Co., 933
> F.2d 66, 73 n.10 (1st Cir. 1991) (quoting Kotler v.
> Am. Tobacco Co., 926 F.2d 1217, 1224 (1st Cir. 1990)).
> Rather, this court "must take state law as it finds
> it: 'not as it might conceivably be, some day; nor
> even as it should be.'"  Kassel v. Gannett Co., 875
> F.2d 935, 950 (1st Cir. 1989) (quoting Plummer v.
> Abbott Labs., 568 F. Supp. 920, 927 (D.R.I. 1983)).

Doe v. Trustees of Bos. Coll., 942 F.3d 527, 535 (1st Cir.
2019).

Plaintiffs' motion to dismiss defendants' counterclaim for
negligent inference with contract is granted.

### 4.   Violation of New Hampshire's Consumer Protection Act

New Hampshire's Consumer Protection Act, N.H. Rev. Stat.
Ann. § 358-A:2, prohibits the use of "any unfair method of
competition or any unfair or deceptive act or practice in the
conduct of any trade or commerce within this state."  The Act
lists several "actions that fall within its prohibition, but
that is not an exhaustive list of prohibited methods, acts, or
practices." Moulton v. Bane, No. 14-CV-265-JD, 2016 WL 1091093,
at *11 (D.N.H. Mar. 21, 2016) (citing ACAS Acquisitions
(Precitech) Inc. v. Hobert, 155 N.H. 381, 402 (2007)).  "If the
challenged conduct is not listed in RSA 358-A:2, to be
actionable it 'must attain a level of rascality that would raise
an eyebrow of someone inured to the rough and tumble of the

world of commerce.'" <u>Moulton</u>, 2016 WL 1091093, at *11 (quoting
<u>Axenics, Inc. v. Turner Constr. Co</u>., 164 N.H. 659, 675 (2013)).

Defendants allege that plaintiffs have violated New
Hampshire's Consumer Protection Act by "converting, disclosing
and utilizing Goodwin Recruiting's confidential information,
improperly targeting Goodwin Recruiting's clients and potential
clients, and improperly interfering with Goodwin Recruiting's
business relationships."  Counterclaim ¶ 136.  Defendants
further allege that these "unfair methods of competition have
occurred in New Hampshire and were done willfully and
knowingly."  <u>Id</u>. at ¶ 137.

Plaintiffs contend that defendants' CPA claim should be
dismissed for several reasons.  First, plaintiffs say,
defendants' CPA claim rests on the same allegations as their
claim for misappropriation of trade secrets, and it is therefore
preempted.  Plaintiffs are largely correct.  <u>See PC Connection,
Inc. v. Price</u>, No. 15-CV-208-PB, 2015 WL 6554546, at *6 (D.N.H.
Oct. 29, 2015) (New Hampshire's Uniform Trade Secrets Act
"displaces conflicting tort, restitutionary, and other law of
this state providing civil remedies for misappropriation of a
trade secret."  The NHUTSA actually sweeps more broadly than
trade secrets," and also "preempts claims that are based upon
the unauthorized use of information, regardless of whether that
information meets the statutory definition of a trade secret.")

(quoting N.H. Rev. Stat. Ann. § 350-B:7) (further quotations omitted).

To the extent defendants' allegations are not preempted, the claims that remain – disparagement of Goodwin Recruiting to other independent contractors, and improperly soliciting Arooga's – fall far short of meeting the requisite "rascality standard."  See Hair Excitement, Inc. v. L'Oreal U.S.A., Inc., 158 N.H. 363, 370 (2009) ("selfish bargaining and business dealings will not be enough to justify a claim for damages" under the Consumer Protection Act) (quoting Barrows v. Boles, 141 N.H. 382, 390 (1996)).  See also Romano v. Site Acquisitions, Inc., No. 15-CV-384-AJ, 2016 WL 50471, at *3 (D.N.H. Jan. 4, 2016) ("Although the plaintiffs' allegations are serious, 'misrepresentations ... [and] broken promises alone do not rise to the level of rascality where successful [CPA] claims dwell.'") (quoting Franchi v. New Hampton Sch., 656 F. Supp. 2d 252, 255-66 (D.N.H. 2009)).

Accordingly, plaintiffs' motion to dismiss defendants' CPA counterclaim is granted.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for sanctions (document no. 24) is **DENIED** without prejudice.  Plaintiffs'

motion to dismiss defendants' counterclaims (document no. 12) is **GRANTED** in part, and **DENIED** in part, as set forth herein.

   **SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August 25, 2021

cc:  Counsel of Record